THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 8, 2019



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Victoria Lynn Toliver,　　　　　　　　　　Case No. 17-20724-gmh
　　　　　　　　　　　　　　　　　　　　　　Chapter 13

　　Debtor.

**DECISION ON CONSUMER PORTFOLIO SERVICES INC.'S OBJECTION TO
DEBTOR'S REQUEST TO MODIFY CONFIRMED PLAN**

I

In April 2014 debtor Victoria Toliver borrowed about $20 thousand to finance her purchase of a 2011 Buick Regal. Toliver agreed to repay the principal with interest in 72 monthly payments and granted the seller a security interest in the Buick, which the seller assigned, with the rest of its interest in the agreement, to Consumer Portfolio Services Inc. (CPS). Thirty-three months later Toliver filed this case under Chapter 13 of the Bankruptcy Code.

CPS filed proof of a claim for about $13,375 secured in the amount of $11,525 (the value of the Buick) and unsecured as to the remainder, about $1,850. See Claim 2-1 & 11 U.S.C. §506(a). Toliver's confirmed chapter 13 plan provides that the trustee will pay CPS equal monthly payments sufficient to pay the secured claim in full with 4.75% interest. ECF Nos. 2, 13 & 17. CPS did not object to confirmation of the plan.

In May 2019 Toliver moved to modify the plan to surrender the Buick to CPS and discontinue payments on CPS's secured claim. Toliver owed CPS about $2,942 on the secured claim and about $1,664 on the unsecured claim when she filed her request to modify the plan. At a preliminary hearing, Toliver's counsel explained that the Buick was no longer running reliably. The plan-confirmation order requires Toliver to obtain the trustee's permission before borrowing money, and the trustee would not grant Toliver financing approval to acquire a replacement vehicle unless she modified the plan to surrender the vehicle. See ECF No. 17; see also *In re King*, No. 16-24784, 2016 WL 11459824 (Bankr. E.D. Wis. July 29, 2016), ECF No. 29.

II

A

CPS objected (twice) to Toliver's requested modification. CPS's first objection contended only that Toliver's modification did not show that she had suffered a change in circumstances that would justify a modification. ECF No. 24. The court overruled that objection by docket order. The Seventh Circuit has long held that a debtor seeking to modify a chapter 13 plan after confirmation is not required to show a change in circumstances. 11 U.S.C. §1329; see *In re Witkowski*, 16 F.3d 739, 744 (7th Cir. 1994) ("[Section] 1329 is clear and unambiguous and gives the debtor, creditor, or trustee the absolute right to seek a modification"); see also *Germeraad v. Powers*, 826 F.3d 962, 972 n.4 (7th Cir. 2016) ("[I]n *Witkowski,* we held that a substantial, unanticipated change in circumstances is not a prerequisite to modification.").

B

CPS next objected to Toliver's request to modify the confirmed plan based on §1329(a) and *In re Nolan*, 232 F.3d 528 (6th Cir. 2000). Section 1329(a) states the grounds on which a debtor may modify a confirmed chapter 13 plan. *Nolan* holds that a confirmed chapter 13 plan that pays an allowed secured claim cannot be modified under §1329 to instead provide for that claim by surrendering the collateral. Toliver and the trustee respond that *Nolan* is neither controlling nor persuasive and that the proposed modification here is permitted by §1329.

While confirmed chapter 13 plans are binding on the debtor and creditors, see 11 U.S.C. §1327, §1329 authorizes debtors, trustees, and holders of allowed unsecured claims to modify plans after confirmation for the reasons described in §1329(a), provided the modified plan is consistent with the limitations stated in §1329(b) & (c). As relevant here, §1329(a)(1) allows a debtor to modify the plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan".

Toliver contends that her proposed modification is one that reduces the amount of payments on claims of a particular class provided for by the plan—namely, the modification decreases remaining payments from the trustee on CPS's secured claim to $0. CPS's secured claim is the only secured claim provided for in the plan, and, in all events, secured claims are generally considered classes of one. *In re Fayson*, 573 B.R. 531, 535 (Bankr. D. Del. 2017). Toliver's proposed modification unquestionably reduces the amount of payments on CPS's secured claim; thus, it is authorized by §1329(a)(1). See *Bank One, NA v. Leuellen (In re Leuellen)*, 322 B.R. 648, 654 (S.D. Ind. 2005) (Hamilton, J.).

Section 1329 permits modifications of the types provided in §1329(a) unless the modification fails to comply §1329(b) or (c). Section 1329(b) commands that plan modifications must comply with the plan requirements stated in 11 U.S.C. §1322(a) & (b) and the plan-confirmation requirements stated in 11 U.S.C. §1325(a). Section 1329(c), not at issue here, limits the duration of the modified plan.

*Nolan*, on which CPS relies, reasons that a modification that provides for a secured claim by surrender is inconsistent with §1329(b) because it offends §1325(a)(5)(B). *Nolan* states, "a secured claim is fixed in amount and status and must be paid in full once it is allowed", and the debtor cannot modify the plan "unless the property to be distributed on account of a claim is not less than the allowed amount of the claim", as required by §1325(a)(5)(B)(ii). 232 F.3d at 533.

Section 1325(a)(5)(B)(ii) has no bearing on the modification Toliver proposes. Section 1325(a)(5) requires as a condition of confirmation that a chapter 13 plan treat allowed secured claims provided for in the plan in one of three ways: (A) in a manner accepted by the holder of the secured claim, (B) by paying the holder of the claim not less than the allowed amount of the secured claim and in the manner specified in clauses (i)—(iii); or (C) by surrendering the property that secures the claim to the holder of the claim. A plan that surrenders the collateral thus satisfies §1325(a)(5) without regard to the collateral's value. Section 1329 does not impose any limitations in addition to those in §1325(a) on how a plan as modified may provide for secured claims.

*Nolan* also finds a limitation on modifying confirmed plans to surrender collateral based on its conclusion that §1329(a)(1) does not allow a debtor to reclassify claims from secured to unsecured after plan confirmation. Whatever the merits of that conclusion, it provides no reason to limit Toliver's proposed modification, which does not purport to reclassify CPS's secured claim. Rather, the plan as modified provides for CPS's secured claim by surrender of the vehicle and pays CPS's unsecured claim in full, as the plan previously provided.

Finally, *Nolan* contends that allowing debtors to modify plans by surrendering collateral and reclassifying secured claims as unsecured "would create an inequitable situation" by which "the debtor could revalue or reclassify the claim whenever the collateral *depreciated*", but "the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*". 232 F.3d at 534. Statutory text, rather than

amorphous notions of equity, controls whether a chapter 13 debtor's proposed plan modification is permissible. Section 1329(a)(1), as explained above, authorizes plan modifications that reduce payments to holders of allowed secured claims. Section 1329(b), which provides the only limitations on that authority, incorporates the plan-confirmation requirements stated in §1325(a), which in turn authorizes the plan to provide for a secured claim by surrender of the collateral to the holder of that claim.

*Nolan* is unpersuasive.

### III

CPS also contends that the debtor's modification is not proposed in good faith, which the debtor disputes. The modification must pass the good-faith test imposed by §1329(b)'s incorporation of §1325(a)(3). See *In re Hutchison*, 449 B.R. 403, 409–10 (Bankr. W.D. Mo. 2011). Section 1325(a)(3) requires that debtors propose plans "in good faith and not by any means forbidden by law"—a requirement that protects against modifications that do not plausibly serve bankruptcy purposes or are not intended to serve those purposes. Given that §1325(a)(5) allows a plan to provide for allowed secured claims by surrender of the collateral, a plan or modification that so provides is not inherently proposed in bad faith for that reason alone. Which is to say, §1325(a)(3)'s good-faith requirement cannot serve as a *per se* limitation on the debtor's ability to modify the plan to surrender collateral.

Accordingly, because the good-faith inquiry requires the court to consider the totality of circumstances, the court will schedule an evidentiary hearing to adjudicate whether Toliver proposes her modification in good faith.

#####